# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DERRICK LAMAR KING,** *et al.*, : <br> Plaintiff, : <br> : <br> v. : <br> : <br> **BERKS COUNTY JAIL SYSTEM** : <br> **SUPERVISOR OFFICIALS,** *et al.*, : <br> Defendants. : | CIVIL ACTION NO. 19-CV-0389 |

FILED
MAY 14 2019
KATE BARKMAN, Clerk
By_____Dep. Clerk

## MEMORANDUM

**RUFE, J.**                                              MAY 14th, 2019

Plaintiffs Derrick Lamar King and Jose Enrique Nuñez filed this civil action which raises claims on behalf of a class of inmates based on the conditions in the Disciplinary Segregation Unit ("DSU") at the Berks County Jail, where they are currently incarcerated. King and Nuñez also moved to proceed *in forma pauperis*. In an Order entered on the docket February 8, 2019, the Court denied King and Nuñez's Motions because Nuñez failed to file a certified copy of his prisoner account statement for the six-month period prior to filing this civil action in accordance with 28 U.S.C. § 1915(a)(2), and King's statement was incomplete. (ECF No. 6.) King and Nuñez were given thirty days to return with that paperwork. The Order also dismissed all individuals other than King and Nuñez as named Plaintiffs because King and Nuñez, non-attorneys proceeding *pro se*, may not represent other individuals in federal court, and informed King and Nuñez that they may not proceed with this case as a class action without counsel. (*Id.*)

King moved for the appointment of counsel and the Court denied that Motion as premature because King and Nuñez had not yet returned with their prison account statements. (ECF Nos. 7 & 8). King was informed that he could renew his motion after complying with the Court's February 8, 2019 Order. (ECF No. 8.) Thereafter, King and Nuñez both moved to

1

proceed *in forma pauperis* but only Nuñez provided a copy of his prisoner account statement. (ECF Nos. 9, 10 & 11.) Additionally, Nuñez filed a letter relating to all of his cases suggesting that each Defendant should have his own counsel because he is concerned about a conflict of interest. (ECF No. 13.) In an Order entered on the docket April 1, 2019, the Court gave King another thirty days to return with a certified copy of his prison account statement in the event he sought to proceed as a plaintiff in this case. (ECF No. 12.) The Order explained that the Court would hold Nuñez's Motion to Proceed *In Forma Pauperis* in abeyance to give King time to comply with the Order and that, if King failed to comply, he would be "dismissed as a party to this case and the case will continue with Nuñez as the only named plaintiff." (*Id.* ¶ 4.) Around the same time, King submitted a Motion for the Appointment of Counsel, which was received by the Court on April 5, 2019, but which is dated April 1, 2019.

Despite having been given two opportunities to submit an up-to-date prison account statement, King has failed to do so. Accordingly, the Court will dismiss him without prejudice as a named plaintiff to this case and will, accordingly, deny his Motion for the Appointment of Counsel. The Court will grant Nuñez leave to proceed *in forma pauperis*, and dismiss his Complaint with leave to amend.

I.  **FACTS**[1]

The Complaint names the following individuals as Defendants: (1) Kevin S. Barnhardt, identified as overseer of the jail; (2) Warden Quigley; (3) CDW J. Smith; (4) Russell, identified as "DW of Operations"; (5) Smith, identified as "DW of Treatment"; (6) Cpt Castro; and (7)

---

[1] The following allegations come from the Complaint. The Complaint includes as an attachment a document that appears to be part of an inmate handbook provided to inmates at the Berks County Jail. The Court does not understand the Complaint to challenge any policy in that handbook apart from the allegations of the Complaint; it appears to have been attached for reference.

2

Daniel Vanbilliard, identified as a hearing officer.[2] All of the Defendants are named in their official capacity.[3] (Compl. at 6.)[4] Those individuals were named as Defendants "due to their supervisory rank" because they "have all [possible] ability to take action [on] the issues in this complaint but fail to do so." (*Id.* at 7.) The proposed class of inmates is "joined by Delta-Unit; Disciplinary; BAU; Security, [and] Protective Custody Statuses housed on Disciplinary Segregation." (*Id.* at 11.) Based on that description of the proposed class, it appears that the Complaint is based on conditions of several different units within the DSU.

The Complaint challenges numerous aspects of the conditions in the DSU. First, the Complaint asserts a Fourth Amendment claim based on allegations that officials at the Berks County Jail "subject [inmates] to an unreasonable and unjustifiable strip and visual body cavity search when inmates arrive to the [DSU]." (*Id.* at 7.) According to the Complaint, the strip search "has nothing to do with contraband." (*Id.*) Second, the Complaint asserts Eighth and/or Fourteenth Amendment claims[5] based on deliberate indifference to inmates' serious medical

---

[2] Although the Complaint lists "Berks County Jail System Supervisor Officials" in the caption, that appears to be a general descriptive heading for the other seven Defendants. Accordingly, the Court will direct the Clerk of Court to terminate that Defendant from the caption.

[3] "Official-capacity suits[] . . . .'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166.

[4] The Court adopts the pagination assigned to the Complaint by the CM-ECF docketing system.

[5] It is not clear whether Nuñez was a sentenced inmate or a pretrial detainee while he was housed in the DSU, and the Complaint suggests that the proposed class includes sentenced inmates and pretrial detainees. The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement, while the Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).

needs due to failures to provide proper mental health treatment and dental treatment for those with dental problems, and a failure to keep contagious inmates separate from others.

Third, the Complaint alleges that a host of conditions within the DSU are unconstitutional because there is insufficient ventilation in the DSU, minimal access to showers, and the unit is infested with mice, bugs and "other unsanitary infestation." (*Id.* at 8.) Additionally, the "cells of the Delta Unit have rust, [the] toilet leaks waste, [there is] mold, [there is a] rodent infestation," and the second tier inmates have the ability to urinate down a pole to the bottom tier. (*Id.*) The Complaint also alleges that inmates are fed cold sandwiches three times a day, that they get one hour of recreation a day, but not on weekends, and that the recreation area is too small for exercise. (*Id.* at 10.) DSU cells are "extremely cold to the point of running nose, cough, [and] sleeping troubles," which is made worse by the fact that inmates on the Delta Unit do not receive appropriate clothing for the temperature. (*Id.*) According to the Complaint, "[t]he BAU section is [the] real cruel and depressive housing unit of delta [comprised of] about 7 cells of inmates force[d] to sleep on a cemented bed based [sic] leaving scratches, bruises, and scars from the tormentive [sic] sleeping [accommodations] . . . leaving inmates who are not mentally ill into becoming severely mentally ill." (*Id.*) The Complaint also asserts that "prison officials have searched cells [of those] who have spoken about lawsuits against the jail in a manner to intimidate to stop the proceeding or filing [of] [an] action." (*Id.* at 8.)

Fourth, the Complaint asserts that inmates are being denied their right to practice their religion in connection with religious diets and religious services. (*Id.*) Fifth, the Complaint asserts claims that that inmates in the DSU are "denied access to the law library [and] the courts," denied access to the telephone, and prevented from preparing their defense in criminal cases. (*Id.*) Sixth, the Complaint appears to assert excessive force claims based on an allegation

4

that "[i]nmates in [the DSU] or in the jail in whole face Guard brutality to inmates by using shoguns, tasers, and OC's to enforce jail rules" and that the "officials [who] carry these weapons are known as Special Operations Group who tend to use these weapons to intimidate prisoners." (*Id.*) Finally, there is an allegation that Defendant Vanbilliard "falsely claims that my rights were explained for my disciplinary hearing," although it is not clear to whom "my" refers. (*Id.*)

Nuñez, on behalf of the class, seeks a declaration that the conditions violate the Constitution and an injunction directing Berks County Jail officials to transfer him and other inmates on the unit to another unit or jail. (*Id.* at 10.) The Complaint specifies that the inmates on Delta Unit in particular seek this relief as well as damages. (*Id.* at 13.)

## II. STANDARD OF REVIEW

The Court will grant Nuñez leave to proceed *in forma pauperis* because it appears he is incapable of paying the fees to commence this civil action.[6] As Nuñez is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) apply, which requires the Court to dismiss the Complaint if it is frivolous or fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Nuñez is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

---

[6] However, as Nuñez is a prisoner, he will be obligated to pay the filing fee in installments in accordance with 28 U.S.C. § 1915(b).

5

Moreover, Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to contain "a short a plain statement of the claim showing that the pleader is entitled to relief." A district court may *sua sponte* dismiss a complaint that does not comply with Rule 8 if "the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (quotations omitted). This Court has noted that Rule 8 "requires that pleadings provide enough information to put a defendant on sufficient notice to prepare their defense and also ensure that the Court is sufficiently informed to determine the issue." *Fabian v. St. Mary's Med. Ctr.*, No. Civ. A. 16-4741, 2017 WL 3494219, at *3 (E.D. Pa. Aug. 11, 2017) (quotations omitted).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995). Courts may dismiss a lawsuit as legally frivolous pursuant to § 1915(e)(2)(B)(i) when a plaintiff lacks standing because, in such cases, there is no legal basis for the plaintiff's claims. *See Banks v. Buchanan*, 336 F. App'x 122, 123-24 (3d Cir. 2009) (per curiam); *Awala v. People Who Want to Restrict Our First Amendment Rights*, 164 F. App'x 215, 217 (3d Cir. 2005) (per curiam). "[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). First, the plaintiff must have suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* (internal quotations omitted). Second, there must be a "causal connection between the injury and the conduct complained of" such that the injury is fairly traceable to the defendant's conduct. *Id.* Third, it must be likely that the plaintiff's injury will be redressed by a favorable decision. *Id.* at 561. As the putative class representative, Nuñez would have to establish that he has standing to

raise claims on behalf of the putative class.[7] *See Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 362 (3d Cir. 2015) ("[T]he 'cases or controversies' requirement is satisfied so long as a class representative has standing, whether in the context of a settlement or litigation class.").

## III. DISCUSSION

The Complaint fails to comply with Rule 8 or establish that Nuñez has standing given the vast number of conditions challenged, the number of units at issue, and the difficulty in determining the conditions to which Nuñez has been exposed. As noted above, the putative class of inmate-plaintiffs described in the Complaint is comprised of inmates housed on the "Delta-Unit; Disciplinary; BAU; Security, [and] Protective Custody Statuses housed on Disciplinary Segregation." (Compl. at 11.) The Court understands this description to mean that the Complaint raises claims on behalf of inmates housed in all of the units of DSU, which include the Delta Unit, Disciplinary, BAU, Security, and Protective Custody.[8]

---

[7] As noted in the Court's prior order, Nuñez, a non-attorney proceeding *pro se* who is incarcerated, is not an appropriate class representative. *See Hagan v. Rogers*, 570 F.3d 146, 159 (3d Cir. 2009). However, Nuñez might be able to move for counsel to overcome that issue. *See id.* King moved for counsel, but the Court has dismissed King without prejudice as a party to this case due to his failure to provide his prison account statement as directed. Nuñez did not join in King's motion, but that would not preclude him from filing his own motion if he sought to proceed on a class basis.

[8] At one point, the Complaint appears to raise claims on behalf of the inmates in the entire jail when alleging that "[i]nmates in [the DSU] or in the jail in whole face Guard brutality to inmates by using shoguns, tasers, and OC's to enforce jail rules" and that the "officials [who] carry these weapons are known as Special Operations Group who tend to use these weapons to intimidate prisoners." (Compl. at 8.) The existence of Tasers or other weapons for security purposes in a jail or prison setting does not, without more, give rise to a constitutional violation. *See Passmore v. Ianello*, 528 F. App'x 144, 147 (3d Cir. 2013) (per curiam) (explaining that "[t]he use of mace, tear gas or other chemical agent of the like nature when reasonably necessary to prevent riots or escape or to subdue recalcitrant prisoners does not constitute cruel and inhuman punishment"); *Banks v. Mozingo*, 423 F. App'x 123, 126 (3d Cir. 2011) (per curiam) ("[T]he use of these products [Tasers and mace] does not in itself amount to an Eighth Amendment violation." (citing *Couden v. Duffy*, 446 F.3d 483, 505-06 (3d Cir. 2006)); *Brown v. Beard*, No. CIV. A. 07-637, 2011 WL 1085890, at *15 (W.D. Pa. Mar. 21, 2011) ("The fact that prison authorities employ

7

However, the Complaint indicates that the conditions on each unit are different. Although some of the allegations are raised in general terms, suggesting that they apply across the board to DSU inmates, some of the allegations are specific to the Delta Unit, and it is unclear whether those conditions are also true for the other units. It also appears that the conditions are unique in the BAU section of the Delta Unit, which is described as the "real cruel and depressive housing unit of delta" comprised of "about 7 cells of inmates force[d] to sleep on a cemented bed." (Compl. at 10.) Without knowing the unit on which Nuñez was housed and what the conditions were on that specific unit, the Court cannot evaluate whether he has stated a claim and, relatedly, whether he would have standing to assert that claim and serve as a class representative in the event class certification were appropriate. In other words, the manner in which the Complaint is pled prevents the Defendants from meaningfully responding and likewise prevents the Court from determining which parts of the prison and which conditions can plausibly be challenged by Nuñez.

Furthermore, other than the allegation about strip-searches, Nuñez has failed to clearly identify a policy or custom of Berks County that led to the constitutional violations in question. As noted above, he has named as Defendants officials at the Berks County Jail in their official capacities, which means his claims are essentially claims against the municipality. A municipality or local government entity is not liable under § 1983 based solely on an allegation that an employee of that entity committed a constitutional violation. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978). Rather, a municipality or a local government entity is

---

the use of restraint chairs, body restraints or taser guns does not, in and of itself, allege a violation of the Eighth Amendment."). Given the lack of detail, it is difficult to discern whether any inmates were actually harmed or whether the Complaint is challenging the mere presence of weapons in the prison.

8

only liable under § 1983 if a policy or custom of that entity caused the constitutional violation in question. *Id.* at 694. A plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). The vast majority of Nuñez's allegations are not clearly tied to a municipal policy or custom in a manner that would suffice to state a plausible claim.

In addition to the above deficiencies, Nuñez has failed to state a claim as to many of the conditions described in the Complaint because he has not plausibly alleged that his constitutional rights were violated. *See West v. Atkins*, 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."). For example, Nuñez alleges that inmates are being deprived of medical care for mental health and dental needs and that they are being prevented from practicing their religion. However, he does not allege any facts establishing that he has a serious mental health or dental need that was not treated as a result of a policy or custom in the DSU or that he was prevented from practicing his religion in some respect. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (establishing that the standard for liability in prison medical cases requires a showing of deliberate indifference to serious medical needs); *Robinson v. Superintendent Houtzdale SCI*, 693 F. App'x 111, 115 (3d Cir. 2017) (per curiam) (observing that "[t]he threshold question in any First Amendment or RLUIPA case is whether the prison's challenged policy or practice has substantially burdened the practice of the inmate-plaintiff's religion.").

Similarly, Nuñez alleges that inmates are being prevented from accessing the courts and telephoning counsel, and that inmates have been retaliated against for filing lawsuits. However, he does not allege any facts establishing that he has suffered an actual injury due to any policy or

9

custom in the DSU that would plausibly establish a denial of access to the courts or to counsel, or that his cell was searched in retaliation for speaking out about filing lawsuits to challenge his conditions of confinement. *See Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) ("To state a claim for retaliation, a prisoner must allege that: (1) he was engaged in constitutionally protected conduct, (2) 'he suffered some adverse action at the hands of prison officials,' and (3) 'his constitutionally protected conduct was a substantial or motivating factor in the decision' to take that action." (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001))); *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) ("Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002))); *Williams v. Delaware Cty. Bd. of Prison Inspectors*, Civ. A. No. 17-4348, 2018 WL 3235788, at * (E.D. Pa. July 2, 2018) (noting that being deprived of phone access "with no other facts surrounding [the] alleged deprivation[] [is] not [a] 'sufficiently serious deprivation[]' resulting in the denial of 'the minimal civilized measure of life's necessities'"); *Randall v. Cty. of Berks, Pennsylvania*, Civ. A. No. 14-5091, 2015 WL 5027542, at *17 (E.D. Pa. Aug. 24, 2015) (explaining that "if an inmate has another method of communicating 'freely and privately with counsel, it is less likely that the restrictions on telephone use will rise to the level of a constitutional violation'" (quoting *Aruano v. Main*, Civ. A. No. 07-3867, 2010 WL 2710564, at *8 (D.N.J. July 7, 2010))). Furthermore the allegation that Defendant Vanbilliard "falsely claims that my rights were explained for my disciplinary hearing," does not appear to stem from any municipal policy or custom—as would be required to state an official capacity

10

claim—and is not clearly tied to Nuñez or sufficiently developed to plausibly allege a constitutional violation.[9]

In sum, the Complaint challenges a host of conditions on several units within the DSU and it is not clear whether Nuñez was exposed to all of the conditions in question, the unit or units upon which he was housed, and whether his constitutional rights were violated. Accordingly, the Court will dismiss the Complaint.

## IV. CONCLUSION

For the foregoing reasons, the Court will: (1) dismiss King without prejudice as plaintiff to this case and deny his Motion for Appointment of Counsel; (2) grant Nuñez leave to proceed *in forma pauperis*; (3) dismiss the Complaint pursuant to Federal Rule of Civil Procedure 8, for failure to state a claim, and for lack of standing; and (4) grant Nuñez leave to file an amended complaint. Any amended complaint must clearly allege facts showing the conditions to which Nuñez was subjected and must identify the policy or custom that caused the constitutional violations at issue. Nuñez is reminded that he may only challenge conditions to which he was subjected and may not challenge the conditions in other units at the Berks County Jail or conditions on his unit to which he was not subjected. An appropriate Order follows.

BY THE COURT:

*/s/ Cynthia M. Rufe*
**CYNTHIA M. RUFE, J.**

---

[9] If that allegation relates to Derrick King, it is worth noting that King is already proceeding on claims against Vanbilliard in a separately filed action. *See King v. Vanbilliard*, Civ. A. No. 18-3962 (E.D. Pa.).

11